**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

LAURENCE CATALANO,              :
                                        Civil Action No. 05-4748 (WJM)
          Petitioner,           :

     v.                         :    **OPINION**

PAUL LAGANA, et al.,            :

          Respondents.          :


**APPEARANCES:**

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondents |
| Laurence Catalano | Carol Marie Henderson, Esq. |
| 426632 | Assistant Attorney General |
| ADTC | Appellate Section |
| SBI 548854c | P.O. Box 086 |
| Avenel, NJ 07001 | Trenton, NJ 08625 |

**MARTINI**, District Judge

   This matter is before the Court on Petitioner Laurence Catalano's Petition for habeas corpus relief under 28 U.S.C. § 2254.

                    I.  BACKGROUND

   In the Superior Court of New Jersey, Law Division, Middlesex County, Petitioner pled guilty pursuant to a plea bargain to fourteen counts of attempted endangering the welfare of a child, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:24-4(a), six counts of endangering the welfare of a child by the dissemination of child pornography, in violation of N.J.S.A. 2C:24-4(b)(4)(a),

and one count of attempted sexual assault, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:14-2(c).  After a Horne[1] hearing, the trial court determined that Petitioner was a repetitive and compulsive sex offender who qualified for sentencing under the Sex Offender Act.  N.J.S.A. 2C:47-1 to 10.  The trial court sentenced Petitioner on November 9, 2001, to concurrent ten-year terms of imprisonment, with five years of parole ineligibility, for attempted sexual assault and one count of endangering the welfare of a child.  The court merged Petitioner's other convictions.  The court also sentenced Petitioner to all requirements of Megan's Law, N.J.S.A. 2C:7-1 to -19, including community supervision for life.

Petitioner timely appealed to the Appellate Division.  The appeal was originally scheduled on the excess sentence calendar.  At oral argument, Petitioner's counsel outlined five claims:

> First, the defendant claims that there was insufficient evidence adduced at the Horne hearing to support the Court's finding that defendant was guilty of being a compulsive offender.
>
> Secondly, the defendant claims that the imposition of the custodial portion of his ten-year sentence with a five-year parole disqualifier to the Department of Corrections prior to transfer to the adult diagnostic and treatment center for the court-mandated treatment deprives him of his expectation of the earliest parole ineligibility date; and, therefore, offends his Eighth Amendment rights against cruel and unusual punishment under Greenholtz v. Nebraska Penal Inmates (phonetic), 442 U.S. 1, 60 Lawyer's Ed. 2d, 668 (1979).

---

[1] State v. Horne, 56 N.J. 372 (1970).

2

>      The third point that he would submit to the Court: Defendant claims that the transfer to the ADTC, Adult Diagnostic and Treatment Center, after the completion of the incarceration in the general population operates as an enhanced sentence that offends the principles announced in <u>Apprendi</u> (phonetic), <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).
>
>      Fourthly, Judge, the defendant claims that there was no actual sexual offense committed in New Jersey, and the scenario in which the offense occurred are arguably within the scope of an entrapment defense, that a sentence above the presumptive seven years for a second degree offense without a parole disqualifier, rather than that imposed; and, therefore, directly -- the direct transfer to the Adult Diagnostic and Treatment Center would be the more just result in the case, and that the Court should exercise its original sentencing jurisdiction under Rule 2:20-3 and resentence the defendant to the seven years without a parole disqualifier.
>
>      And, finally, Judge, is the fifth claim. Defendant moves to vacate the plea as not entered into knowingly, voluntarily, and willingly, and that his sentence to ADTC would follow that of the parole disqualifier, and that parole from ADTC under the general parole lines (sic), functionally, actually does not exist, which then relates to the other matters that he submitted above.

(Resp. Ex. Ra17 at 149-51, Transcript of Excessive Sentencing Oral Argument, Jan. 8, 2003.)  The court found that the motion to vacate the plea was not properly before the court, as it had never been raised before the trial court; all other matters were scheduled to go on the regular briefing appeal calendar.  (Resp. Ex. Ra17 at 154-56.)

In his brief on appeal, Petitioner raised the following claims:

>    POINT 1
>    THE SENTENCE IMPOSED UPON THE DEFENDANT PURSUANT TO
>    N.J.S.A. 2C:47-3h(3) IS UNCONSTITUTIONAL
>    1.1  STATUTORY CONSTRUCTION: DUE PROCESS, EQUAL
>    PROTECTION
>    1.2  EIGHTH AMENDMENT
>    1.3  SEX OFFENDER TREATMENT
>
>    POINT 2
>    THE SENTENCE IMPOSED UNDER N.J.S.A. 2c:47-3h(3) IS
>    FUNCTIONALLY EQUIVALENT TO A PAROLE DISQUALIFIER FOR
>    THE MAXIMUM SENTENCE CONTRARY TO N.J.S.A. 2C:43-6b

(Respondents' Ex. Ra11, Defendant-Appellant Brief at i.)  On June 8, 2004, the Appellate Division dismissed Petitioner's appeal as moot, because he had been transferred to ADTC.  (Resp. Ex. Ra5, Opinion of Appellate Division, June 8, 2004.)  In addition, the Appellate Division declined to consider the following arguments, which it characterized as having been raised by Petitioner for the first time in his reply brief.

>    I.   THE DEFENDANT IS DENIED HIS CONSTITUTIONAL
>         RIGHT TO THE REASONABLE EXPECTATION OF HIS
>         EARLIEST PAROLE ELIGIBILITY DATE.
>
>    II.  THE DEFENDANT MUST BE PROVIDED WITH HIS
>         CONSTITUTIONAL RIGHT TO MENTAL HEALTH
>         TREATMENT FOR ALL PERIODS OF PAROLE
>         SUPERVISION AND REGISTRATION FOLLOWING
>         COMPLETION OF THE CUSTODIAL PORTION OF HIS
>         SENTENCE.
>
>    III. THE SPECIAL CLASSIFICATION REVIEW BOARD MUST
>         BE ABOLISHED AS A LEGISLATIVE AND EXECUTIVE
>         BODY SPECIFICALLY CHARGED EITHER DE JURE OR
>         DE FACTO WITH DEPRIVING THE DEFENDANT OF HIS
>         CONSTITUTIONAL RIGHT TO THE REASONABLE
>         EXPECTATION OF HIS EARLIEST PAROLE
>         ELIGIBILITY DATE.

(Resp. Ex. 5a at 5-6.)

Petitioner filed a petition for certification with the New Jersey Supreme Court, raising the following claims:

> POINT 1
> THE PLENARY PANEL ERRED IN HOLDING THAT THE CASE IS MOOT
>
> POINT 2
> THE PLENARY PANEL ERRED IN HOLDING THAT THE MATTER IS NOT THE TYPE OF ARGUMENTS THAT ARE CAPABLE OF REPETITION YET EVADING REVIEW
>
> POINT 3
> THE PLENARY PANEL ERRED IN HOLDING THAT THE DEFENDANT'S CONSTITUTIONAL CLAIMS ARE NOT WELL-DEVELOPED IN HIS BRIEF
>
> POINT 4
> THE PLENARY PANEL ERRED IN HOLDING THAT THE ARGUMENTS RAISED IN DEFENDANT'S REPLY BRIEF "GO FAR BEYOND ANY ARGUMENTS PRESENTED IN HIS ORIGINAL BRIEF"
>
> POINT 5
> THE PLENARY PANEL ERRED IN NOT REMANDING THE MATTER FOR THE REQUISITE EVIDENTIARY HEARINGS SO THAT AN APPROPRIATE RECORD COULD BE DEVELOPED FOR APPELLATE REVIEW.

(Resp. Ex. Ra12, Defendant's Brief at i.)  The New Jersey Supreme Court denied certification on October 6, 2004.  <u>State v. Catalano</u>, 182 N.J. 140 (2004); (Resp. Ex. Ra7.)

Petitioner timely filed a petition for writ of certiorari in the Supreme Court of the United States, raising the following claims:

> 1.  Whether the State of New Jersey's premature transfer of the petitioner from a state prison to the Adult Diagnostic and Treatment Center prior to the completion of the mandatory parole disqualifier in direct violation of the sentence imposed by the judgment of conviction in accordance with the explicit dictates of the statute makes moot the matter for

purposes of challenging the constitutionality of the statute and sentence imposed therefrom for purposes of appeal?

2. Whether denial of the mandatory mental health treatment during the period of parole ineligibility imposed by the judgment of conviction in accordance with the statute deprived the petitioner of the mental health treatment that is the single most critical criteria for realizing his reasonable expectation of his earliest parole eligibility date and therefore the denial of which extends his period of incarceration to the maximum sentence imposed by the judgment of conviction and therefore constitutes cruel and unusual punishment under the Eighth Amendment and the due process and equal protection clauses of the Fourteenth Amendment and decisional law opposing enhanced sentences not predicated on prior convictions?

3. Whether classification and separate imprisonment of the petitioner because of his mental condition from which release on parole is predicated on being cured of a mental condition for which there is no cure denies him the reasonable expectation of his earliest parole eligibility date and inherently constitutes cruel and unusual punishment under the Eighth Amendment and denial of his liberty interest under the due process and equal protection clauses of the Fourteenth Amendment?

4. Whether the plea constituted a knowing, voluntary, and willing waiver to petitioner's right to a sufficiently intensive and efficacious mental health treatment program that would ensure his reasonable expectation of his earliest parole eligibility date and minimize the likelihood of recidivism when the State and the Court withheld the knowledge that the petitioner would only be released on parole when he was cured of his mental illness when the State and the Court knew that there was no cure for his mental illness upon which he could base a reasonable expectation for parole prior to serving the maximum sentence imposed?

5. Whether the State's bifurcation of the sentence into a "punishment" part constituting a period of parole ineligibility of one-half of the sentence in which the petitioner is statutorily precluded from

> receiving any mental health treatment that is the
> single most critical element upon which he can base his
> reasonable expectation of the earliest parole
> eligibility date and a "rehabilitative" period
> following the satisfaction of the parole disqualifier
> in which he will receive treatment only in the
> approximately last two years of the remaining five year
> sentence constitutes a scheme of punishment that
> offends the cruel and unusual punishment clause of the
> Eighth Amendment and the due process and equal
> protection clauses of the Fourteenth Amendment?

(Resp. Ex. Ra13, Petition for Writ of Certiorari.)  On February 28, 2005, the Supreme Court denied certiorari.  (Resp. Ex. Ra9.)  Thus, for purposes of determining the timeliness of this Petition, Petitioner's conviction became final on that date.  See 28 U.S.C. § 2244(d).

On September 30, 2005, this Court received Petitioner's § 2254 Petition, dated September 22, 2005, which raised the following grounds for relief:

> Ground One:
> The State of New Jersey's transfer of the petitioner to
> the Adult Diagnostic and Treatment Center prior to the
> completion of the mandatory parole disqualifier in
> direct violation of the sentence imposed by the
> judgment of conviction in accordance with the explicit
> dictates of the statute did not make moot the matter
> for purposes of challenging the constitutionality of
> the statute and sentence imposed therefrom for purposes
> of appeal?
> ...
> Ground Two:
> The denial of the mandatory mental health treatment and
> credits during the period of parole ineligibility
> imposed by the judgment of conviction in accordance
> with the statute deprived the petitioner of the mental
> health treatment that is the single most critical
> criteria for realizing his reasonable expectation of
> his earliest parole eligibility date and therefore the
> denial of which extends his period of incarceration to

> the maximum sentence imposed by the judgment of
> conviction and therefore constitutes cruel and unusual
> punishment under the Eighth Amendment and the due
> process and equal protection clauses of the Fourteenth
> Amendment and decisional law opposing enhanced
> sentences not predicated on prior convictions?
> ...
> Ground Three:
> The classification and separate imprisonment of the
> petitioner because of his mental condition from which
> release on parole is predicated on being cured of a
> mental condition for which there is no cure denies him
> the reasonable expectation of his earliest parole
> eligibility date and inherently constitutes cruel and
> unusual punishment under the Eighth Amendment and
> denial of his liberty interest under the due process
> and equal protection clauses of the Fourteenth
> Amendment?
> ...
> Ground Four:
> The plea did not constitute a knowing, voluntary, and
> willing waiver to petitioner's right to a sufficiently
> intensive and efficacious mental health treatment
> program that would ensure his reasonable expectation of
> his earliest parole eligibility date and minimize the
> likelihood of recidivism when the State and the Court
> withheld the knowledge that the petitioner would only
> be released on parole when he was cured of his mental
> illness when the State and the Court knew that there
> was no cure for his mental illness upon which he could
> base a reasonable expectation for parole prior to
> serving the maximum sentence imposed?
> ...
> Ground Five:
> The State's bifurcation of the sentence into a
> "punishment" part constituting a period of parole
> ineligibility of one-half of the sentence in which the
> petitioner is statutorily precluded from receiving any
> mental health treatment that is the single most
> critical element upon which he can base his reasonable
> expectation of the earliest parole eligibility date and
> a "rehabilitative" period following the satisfaction of
> the parole disqualifier in which he will receive
> treatment only in the approximately last two years of
> the remaining five year sentence constitutes a scheme
> of sentence that offends the cruel and unusual
> punishment clause of the Eighth Amendment and the due

>     process and equal protection clauses of the Fourteenth
>     Amendment?
>     ...
>     Ground Six:
>     The petitioner was compelled to participate in a
>     psychological evaluation to determine if he were a
>     "repetitive and compulsive sex offender" as the
>     condition precedent for sentencing to the Adult
>     Diagnostic and Treatment Center and as a result of the
>     answers given during that evaluation he was sentenced
>     to a prison where he was denied credits that are
>     otherwise statutorily given to all other inmates at all
>     other prisons.

(Petition, ¶ 12.)

Respondents have filed an Answer [10] in which they assert that Petitioner's claims are entirely unexhausted. Petitioner has not filed a reply in support of the Petition.

## II. ANALYSIS

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."[2]  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532

---

[2] Exhaustion of state remedies has been required for more than a century, since the Supreme Court's decision in Ex parte Royall, 117 U.S. 241 (1886). The exhaustion doctrine was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 516-18 (1982), and more recently was the subject of significant revisions in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217 (April 24, 1996).

U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose, 455 U.S. at 516-18.  Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review.  Rose, 455 U.S. at 519.

Moreover, the exhaustion doctrine is a "total" exhaustion rule.  That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." Lundy, 455 U.S. at 522.  At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions.  The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions,[3] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'"  Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir.), cert. denied, 534 U.S. 1015 (2001)).  Because

---

[3] See 28 U.S.C. § 2244(d).

of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court. "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." Crews, 360 F.3d at 151. Indeed, the Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." Crews, 360 F.3d at 154.

The Supreme Court has somewhat limited the stay-and-abeyance rule announced in Crews.

> [S]tay and abeyance should be available only in limited circumstances. ... [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> ...
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. ... For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the

> entire petition would unreasonably impair the petitioner's right to obtain federal relief.

*Rhines v. Weber*, 544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations. "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278. *See also Crews*, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court. If a petitioner fails to meet either time-limit, the stay should be vacated *nunc pro tunc*.") (citations omitted).

A petitioner must exhaust state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); *Ross v. Petsock*, 868 F.2d 639 (3d Cir. 1989); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the

courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Picard v. Connor, 404 U.S. 270, 275 (1971); Castille v. Peoples, 489 U.S. 346, 350 (1989).

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient; the legal theory and factual predicate must also be the same. Id. at 277.

Here, the Court disagrees with Respondents as to Grounds One, Two, Three, and Five.  A review of the text of Petitioner's briefs reveals that these claims were exhausted in state court. The claims asserted in Grounds Four (voluntariness of plea) and Six (participation in psychological evaluation), however, were never presented to the state courts.  Accordingly, this Court must determine whether to dismiss this mixed petition.

Petitioner was sentenced on November 9, 2001.  New Jersey Court Rules permit a motion to withdraw a plea of guilty after sentence "to correct a manifest injustice."  N.J.Ct.R. 3:21-1.

13

Petitioner can file a motion for post-conviction relief up to five years after rendition of the judgment or sentence sought to be attacked.  N.J.Ct.R. 3:22-12.  Accordingly, Petitioner can file a motion for post-conviction relief until November 9, 2006.

For purposes of 8 U.S.C. § 2244(d), Petitioner's conviction became final on February 28, 2005, when the U.S. Supreme Court denied certiorari.  Thus, the one-year limitations period for filing a federal habeas petition expired on February 28, 2006.  Although Petitioner still has time to return to state court to exhaust his unexhausted claims, outright dismissal of this Petition at this time would make it impossible for Petitioner to return to this Court following exhaustion of his state remedies.

Petitioner has filed no response to Respondents' Answer alleging failure to exhaust.  He has suggested to this Court no "good cause" for failure to exhaust Grounds Four and Six.  In addition, these claims do not appear to be meritorious.  When Petitioner pleaded guilty, he was advised by the court that he would be examined by the Department of Corrections to determine if his conduct in committing the offense was characterized by a pattern of repetitive and compulsive behavior and that, if it was, whether he would benefit from sex offender treatment and whether he would be willing to participate in such treatment.  (Resp. Ex. Ra14 at 11, Transcript, April 11, 2000).  Petitioner was also advised that if the sentence imposed was greater than

14

seven years he would be confined first at a facility other than the Adult Diagnostic and Treatment Center, as well as other aspects of sentencing as a sex offender, including the special parole provisions applicable to sex offenders. (Resp. Ex. Ra14 at 11-16.) Petitioner never voiced any objection to the examination or other procedures described to him. (Id.) Nor are sex offenders, during their parole ineligibility terms, deprived of any credits available to other prisoners. To the contrary, no prisoners are eligible for commutation, work, or gap-time credits during their parole ineligibility terms. See, e.g., State v. Abdul Webster, 383 N.J. Super. 432 (App. Div. 2006), and cases cited therein. Petitioner has failed to establish any constitutional deprivation arising out of either the guilty plea proceeding or the examination resulting in the imposition of a period of parole ineligibility. Accordingly, Petitioner will be permitted to advise the Court whether he wishes to proceed with the exhausted claims only or whether he wishes the Court to dismiss the Petition in its entirety.

### III.  CONCLUSION

For the foregoing reasons, this Court finds that Petitioner has failed to exhaust his available state court remedies as to Grounds Four and Six. An appropriate Order follows.

s/William J. Martini

William J. Martini
United States District Judge

DATED: 6/5/06